**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **WASHINGTON FEDERAL BANK** *f/k/a* Washington Federal NA, | § § § | |
| Plaintiff, | § § § | |
| v. | § § | **Civil Action No. 3:24-CV-00988-L** |
| **TODD A. BROOKS,** | § § § | |
| Defendant. | § § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the court is Plaintiff Washington Federal Bank's ("Plaintiff" or "WaFed") Motion for Summary Judgment ("Motion") (Doc. 30), filed August 7, 2025. After careful consideration of the Motion, briefs, appendix, record, and applicable law, the court **grants** Defendant's Motion for Summary Judgment (Doc. 30).

## I. Procedural and Factual Background

Plaintiff filed its Original Complaint (Doc. 1) on April 23, 2024. WaFed brought this action against Defendant Todd A. Brooks ("Defendant" or "Mr. Brooks"), alleging a claim of breach of contract. In his Answer, Mr. Brooks asserted four affirmative defenses: material alteration without consent; fraudulent inducement; promissory estoppel; and avoidable consequences; however, Mr. Brooks only asserted the affirmative defense of fraudulent inducement in his Response to the Motion. Because Defendant failed to address the other three affirmative defenses in a response, he has abandoned those arguments, thereby the court need not discuss them. *See Black v. North Panola Sch. Dist.*, 461 F.3d 584, 588 n. 1 (5th Cir. 2006) (claim may be considered abandoned where a plaintiff fails to defend it in response to a motion to dismiss). Although in *Black*, it was

**Memorandum Opinion and Order - Page 1**

the plaintiff who failed to defend, the court sees no reason why the same principle of law would not apply to Mr. Brooks since he has the burden to establish his affirmative defenses.

In 2017, WaFed entered into a loan agreement (the "Agreement") with Paradox Upstream, LLC as the borrower and Mr. Brooks as the guarantor. Alongside Paradox Upstream, LLC, that original loan agreement was amended multiple times to include more borrowers—Paradox Midstream, LLC, Capital Commercial Development, Inc., and Neuhaus Barrett Investments, LLC (collectively "Borrowers"). The amount of the line of credit in the Agreement was also increased overtime through amendments to the loan. Along with the Agreement, Mr. Brooks signed a guaranty agreement ("Guaranty Agreement") in 2017. The Borrowers obligations under the Agreement became due and were not paid. Mr. Brooks had pledged $1,000,000 as security for his obligations under the Guaranty Agreement. Borrowers filed a bankruptcy petition on May 22, 2023. Post-petition, WaFed provided Borrowers with post-petition financing and exercised its rights against the $1,000,000 pledged by Mr. Brooks. WaFed argues that the total remaining due to it by Borrowers is no less than $38,268,462.62, plus interest, at the time it filed its Motion. This total represents $35,738,356.25 in principal lent by WaFed to Borrowers; $250,000 in a first protective advance; $235,970 as a second protective advance; and $4,000,000 as additional post-petition financing lent by WaFed to Borrowers as a Debtor in Possession Lender; and a $48,750 line of credit paid out to Borrowers by WaFed minus the offsets of $1,000,000 from Mr. Brooks' pledged bank account and $1,004,613.63 from a bankruptcy asset sale..

## II.    Legal Standards

### A. Summary Judgment

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party.  *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original).  "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587.  (citation omitted).  Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment.  *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).  Unsubstantiated assertions,

improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III.    Discussion

### A. Breach of Contract

WaFed contends that it is entitled to summary judgment on its breach of contract claim. It argues that all four elements of a breach of contract are met with no material fact issues. Pl.'s Summ. J. Br. (Doc. 31) at 9-11 (citing Def.'s Original Answer; Declaration of Trish Pascoe; Unlimited Guaranty of Todd A. Brooks, dated January 7, 2019; Amendment to Revolving Promissory Note, dated April 4, 2023). First, WaFed asserts that the Guaranty Agreement is a valid agreement, owned by WaFed, and entered for its benefit. *Id.* at 9. Second, WaFed states that the terms of the Agreement are unambiguous and it "agreed to advance up to $40,000,000 to Borrowers in a revolving line of credit," while "Borrowers agreed to make monthly interest-only

payments, maintain certain financial covenants, provide certain reporting to WaFed, and to repay the principal and all unpaid amounts remaining due as of the maturity date." *Id.* at 9-10. According to Plaintiff, then "Borrowers breached each such term and filed for bankruptcy, all which constitutes an event of default under the Loan Documents." *Id.* at 10. Third, it contends that the "undisputed facts show that Borrowers, the principal debtors, have defaulted by failing to pay WaFed the amounts due under the Loan," establishing "the sole condition precedent to enforcement of the Guaranty Agreement against Brooks." *Id.* at 10-11. Fourth, it states that Mr. Brooks "admits that the obligations under the Loan became due and were not paid," and such obligations remain unpaid. *Id.* at 11. In his Response, Mr. Brooks does not dispute the second, third, or fourth elements for a breach of contract claim. *See* Def.'s Summ. J. Br. (Doc. 34). He does assert the affirmative defense of fraudulent inducement. *Id.* at 5.

The parties agree that Texas law governs the dispute at hand, as they both rely on Texas law in briefing their respective arguments. "In construing a contract under Texas law, courts must examine and consider the entire writing and give effect to all provisions such that none [is] rendered meaningless." *International Turbine Servs., Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 497 (5th Cir. 2002) (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). Contract provisions "cannot be read in isolation; all of the provisions must be considered with reference to the whole." *In re Ford Motor Co.*, 211 S.W.3d 295, 298 (Tex. 2006); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003) ("No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument."). Contract provisions must also be interpreted "so as to avoid meanings that produce unreasonable, oppressive, or absurd results." *Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105, 114 (5th Cir. 2010) (citation omitted); *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311 (Tex. 2005) (per curiam) ("[C]ourts construe contracts from a utilitarian standpoint bearing in mind the particular business activity sought

to be served, and will avoid when possible and proper a construction [that] is unreasonable, inequitable, and oppressive."). In addition, courts "presume parties intend what the words of their contract say" and "strive to honor the parties' agreement and not remake their contract by reading additional provisions into it." *Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010) (citations omitted).

When contractual language can be given a certain or definite meaning, it is unambiguous and interpreted as a matter of law by the court. *DeWitt Cnty. Elec. Co-op., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999) (footnote and citation omitted). Regarding ambiguity, the court in *DeWitt* explained:

> A term is not ambiguous because of a simple lack of clarity. Nor does an ambiguity arise merely because parties to an agreement proffer different interpretations of a term. An ambiguity arises only after the application of established rules of construction leaves an agreement susceptible to more than one meaning. Further, for an ambiguity to exist, both potential meanings must be reasonable.

*Id.* Whether a contract is ambiguous is a question of law for the court. *R & P Enter. v. LaGuarta, Gavrel & Kirk*, 596 S.W.2d 517, 518 (Tex. 1980). Neither party contends the terms of the Guaranty Agreement are ambiguous, and the court agrees and concludes the terms are unambiguous.

"In Texas, [t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quotation marks and citation omitted). "A breach occurs when a party fails to perform a duty required by the contract." *Id.* "Whether a party has breached a contract is a question of law for the court." *X Techs., Inc. v. Marvin Test Sys., Inc.*, 719 F.3d 406, 413 (5th Cir. 2013) (quoting *Meek v. Bishop Peterson & Sharp, P.C.*, 919 S.W.2d 805, 808 (Tex. App.— Houston [14th Dist.] 1996, writ denied)).

Specifically, as to a breach of a guaranty contract, the plaintiff must prove "(1) the existence and ownership of the guaranty contract, (2) the terms of the underlying contract by the holder, (3) the occurrence of the conditions upon which liability is based, and (4) the failure or refusal to perform the

**Memorandum Opinion and Order - Page 6**

promise by the guarantor." *Harrison Co., L.L.C. v. A-Z Wholesalers, Inc.*, 44 F.4th 342, 347 (5th Cir. 2022) (citation omitted).

WaFed has provided sufficient evidence to show there is no genuine dispute of material fact as to the second, third, and fourth elements and Mr. Brooks has failed to rebut such a finding with competent summary judgment evidence. WaFed supports its conclusion with sufficient evidence from Defendant's Answer, the Unsworn Declaration of Trish Pascoe, and the Unlimited Guaranty of Todd A. Brooks, dated January 7, 2019. Doc. 31 at 9-11. Therefore, the court finds that there is no genuine dispute as to any material fact regarding these three elements. As fraudulent inducement goes to whether there is an enforceable agreement, the court will discuss the first element in the following sections on fraudulent inducement. *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 289-90 (5th Cir. 2002).

## B. Fraudulent Inducement

Mr. Brooks argues that WaFed is not entitled to recovery on its claim because the Guaranty Agreement was fraudulently induced. Doc. 34 at 5. WaFed contends that Mr. Brooks waived all claims and defenses; his affirmative defenses pertain to the Borrowers, not himself; the remaining relevance of his affirmative defenses are negated by his ratification of the Guaranty Agreement; and he fails to raise a genuine dispute of material fact as to each element of his affirmative defense. Doc. 31 at 12-14; Pl.'s Summ. J. Reply (Doc. 36) at 5. Setting aside WaFed's other contentions, the court finds that Mr. Brooks has not raised a genuine dispute of material fact regarding each element of his affirmative defense.

To present fraudulent inducement properly as an affirmative defense, "the elements of fraud must be established as they relate to an agreement between the parties." *Haase v. Glazner*, 62 S.W.3d 795, 798-99 (Tex. 2001); *Oldham v. United States Small Bus. Admin.*, No. 19-10644, 2025 WL 1393867, at *7 (5th Cir. May 14, 2025) (citations omitted). The elements of a fraud claim

**Memorandum Opinion and Order - Page 7**

are: "(1) the [opposing party] 'made a material representation that was false'; (2) the [opposing party] 'knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth;' (3) the [opposing party] intended to induce the [other party] to act upon the representation; and (4) the [other party] actually and justifiably relied upon the representation and suffered injury as a result." *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018) (citations omitted). Regarding the fourth element, "a party to a written contract cannot justifiably rely on oral misrepresentations regarding the contract's unambiguous terms." *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 658 (Tex. 2018).

As Mr. Brooks has pleaded fraudulent inducement as an affirmative defense, he must raise a genuine dispute of material fact as to all four elements to show WaFed is not entitled to recovery on its claim because the Guaranty Agreement was fraudulently induced. Doc. 34 at 5. He states that the maximum amount guaranteed by him under the original Guaranty Agreement was $25,000,000; however, the amount of the loan was increased to $40,000,000 through several amended loan agreements and he contends that he was fraudulently induced into guaranteeing the additional $15,000,000. *Id.* at 5-6. Mr. Brooks states that he was hesitant "to agree to the increase because of his concern that WaFed might seek collection from him for the additional amount," but "[e]ach time the Loan was amended, WaFed assured [Mr.] Brooks that that it would not seek to collect from [him]." *Id.* at 5 (citing Def.'s App. (Doc. 35-1) at 2). Mr. Brooks alleges that WaFed convinced him to agree to the loan increases by pointing out it had not enforced its rights against Defendant in the past, even though Borrowers had failed to satisfy financial covenants and reporting requirements previously, and that it asked him to "pledge $1,000,000 as security for his obligations under the Guaranty [Agreement]" in lieu of it ever seeking to collect on the Guaranty Agreement. *Id.* at 6 (citing Doc. 35-1 at 2). In summary, Mr. Brooks argues that he relied on

WaFed's allegedly fraudulent misrepresentation that it would not enforce the Guaranty Agreement when he signed subsequent loan amendments, and but for such representation, he would not have agreed to amend the loan and he would have revoked the Guaranty. *Id.*

WaFed argues that at a minimum, Mr. Brooks is bound by the terms of the initial Guaranty because he does not contend that he was fraudulently induced into entering that initial agreement; however, Plaintiff also argues that he failed to raise a genuine dispute of material fact as to each element of his affirmative defense. Doc. 36 at 1. Regarding the first element, WaFed states that Mr. Brooks' evidence fails to prove, or create a genuine dispute of material fact, that it made a false material representation, as his Declaration only vaguely alludes to WaFed's alleged statements about leniency, but he does not provide competent summary judgment evidence that WaFed made a statement about never seeking recovery. *Id.* at 5. WaFed also states that there is no evidence that it promised to never seek enforcement, just that it would forbear from doing so at the time of the loan amendment negotiations. *Id.* Regarding the second and third elements, WaFed argued that Mr. Brooks put forth no evidence regarding its knowledge or intent. *Id.* at 6. As to the fourth element, WaFed contends that Mr. Brooks "consistently conflates the Borrowers' reliance in amending the Loans, with his alleged reliance regarding the Guaranty [Agreement]." *Id.*

In this case, the contract was the Guaranty Agreement and the allegedly fraudulent misrepresentation was that WaFed would not seek to enforce the Guaranty Agreement. Mr. Brooks argues that he would not have entered into the Guaranty Agreement, but for WaFed's representations, at the time of the loan amendments, that it would not seek to enforce the Guaranty Agreement. For his evidence regarding the allegedly fraudulent misrepresentation, Mr. Brooks relies primarily on his declaration. This declaration states that each time the loan was amended, Rusty Stehr, a division manager for WaFed, assured him it would not seek to enforce the Guaranty

Agreement. Doc. 35-1 at 2. He states that the assurances were reinforced by WaFed pointing to its history of leniency, its senior management referring to him as family, and his pledge of $1,000,000 as additional security at the request of WaFed. *Id.* at 2-3.

In its Reply, WaFed objects to Mr. Brooks' summary judgment evidence, arguing "the Declaration, or at a minimum certain portions thereof, as inadmissible or otherwise objectionable, and requests the Court strike the objectionable portions of the Declaration." Doc. 36 at 9. WaFed asserts that Mr. Brooks' Declaration is "improperly conclusory, and merely states bare allegations of fact," with "[t]he majority of the Declaration contain[ing] subjective feelings and personal interpretation of the events at issue." *Id.* WaFed specifically objects to paragraphs 5-11. The court has determined that it would reach the same conclusion whether it struck the objected to portions of Mr. Brooks' declaration or not.

The representation Mr. Brooks relies on is in direct contradiction to the terms of the Guaranty Agreement. The Guaranty Agreement provides:

> In the event of a default in the payment or performance of all or any part of the Obligations when such Obligations become due, whether by its terms, by acceleration, or otherwise, Guarantor shall, without notice or demand, promptly pay the amount due thereon to Lender, in lawful money of the United States. The exercise by Lender of any right or remedy under this Guaranty or under any other agreement or instrument, at law, in equity or otherwise, shall not preclude concurrent or subsequent exercise of any other right or remedy. Whenever Guarantor pays any sum which is or may become due under this Guaranty, written notice must be delivered to Lender contemporaneously with such payment. In the absence of such notice to Lender by Guarantor, any sum received by Lender on account of the Obligations shall be conclusively deemed paid by Borrowers.

Pl.'s Ex. D-17 (Doc. 37-1) at 6. The Guaranty Agreement provides that Mr. Brooks pay the amount due to the lender in the event of a default in the payment. The purpose of the whole Guaranty Agreement is imparting liability for nonpayment to Mr. Brooks; however, he argues that he was fraudulently induced into entering the agreement through assurances that WaFed would not seek

**Memorandum Opinion and Order - Page 10**

to enforce it. In choosing to enter a written agreement Mr. Brooks cannot justifiably rely on oral assurances that such agreement would not be enforced. Such logic would make the Guaranty Agreement superfluous. The terms of the Guaranty Agreement directly contradict the alleged oral misrepresentation and Plaintiff's expectations. Moreover, the Guaranty Agreement, in each iteration before the court, provides as follows:

> This Guaranty, together with any Loan Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty and supersedes all prior written and oral agreements and understandings, if any, regarding same. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

*Id* ¶8; Pl.'s Ex. B ¶8; Pl.'s Ex. D-5 ¶8. Additionally, the loan documents provide as follows:

> THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN AGREEMENTS AMONG THE PARTIES.

> or

> THE LOAN AGREEMENT, AS AMENDED, REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN AGREEMENTS BETWEEN THE PARTIES.

Pl.'s Ex. C at 17; Pl.'s Ex. D-1 at 58; Pl.'s Ex. D-6 at 182; Pl.'s Ex. D-7 at 225; Pl.'s Ex. D-8 at 235; Pl.'s Ex. D-9 at 246; Pl.'s Ex. D-10 at 255; Pl.'s Ex. D-12 at 272; Pl.'s Ex. D-13 at 281; Pl.'s Ex. D-14 at 290; Pl.'s Ex. D-15 at 303; Pl.'s Ex. D-16 at 308. Mr. Brooks signed these documents stating that such documents contain the final and complete agreements of the parties that cannot be amended orally, in spite of his claim that he relied on representations from WaFed that it would not seek to enforce the Guaranty Agreement, in contradiction to the terms of such agreement. In light of the plain and unequivocal language in the written documents that Mr. Brooks signed, it is

**Memorandum Opinion and Order - Page 11**

nonsensical for Mr. Brooks to assert that he was unaware of the provisions in the documents that disallowed amendments by oral statements. Therefore, the court determines that Defendant could not have justifiably relied on Plaintiff's alleged representation.

### C. Damages

Finally, with respect to WaFed's damages, it argues that it "is entitled to recovery from [Mr.] Brooks of any and all amounts due and owing by Borrowers." Doc. 31 at 15. "That includes both the amounts advanced under the terms of the Loan (plus all interest, costs, fees, and expenses), as well as all amounts advanced to Borrowers during the Bankruptcy proceedings." *Id.* This amount totals $38,268,462.62. *Id.* at 9. WaFed also contends that it is entitled "to recover its attorney's fees incurred in pursuit of its claims against [Mr.] Brooks." *Id.* Mr. Brooks argues that he "is not liable for the post-petition loan because a debtor and a debtor-in-possession are distinct legal entities," making the amounts advanced to Borrowers during the Bankruptcy proceedings categorically different from the other loan amounts.  Doc. 34 at 8.

Plaintiff has shown that it is entitled to damages. The question in that regard is the amount of damages to which Plaintiff is entitled. The court will hold a hearing on this issue to determine the amount of damages and interest to which Plaintiff is entitled. The court will set a hearing once it has time to determine a suitable date for all parties to be present.

### IV. Conclusion

For the reasons stated herein, the court **determines** that no genuine dispute of material fact exists with respect to Plaintiff's breach of contract claim, Defendant's fraudulent inducement affirmative defense, or Plaintiff's damages. Plaintiff is, therefore, entitled to judgment as a matter of law on these claims.  Accordingly, the court **grants** Plaintiff's Motion for Summary Judgment (Doc. 30).

**It is so ordered** this 31st day of March, 2026.

Sam A. Lindsay
United States District Judge